Solomon S. SEAY, Jr., Plaintiff,

v.

John PATTERSON, Individually, and as Governor of the State of Alabama, Defendant.

Civ. A. No. 1796-N.

United States District Court
M. D. Alabama, N. D.

Aug. 15, 1962.

Solomon S. Seay, Jr., Montgomery, Ala., pro se.

Robert P. Bradley, Legal Advisor to Governor John Patterson, Montgomery, Ala., and Nicholas S. Hare, Mobile, Ala., for defendant.

JOHNSON, District Judge.

The plaintiff, by verified complaint filed with this Court on March 28, 1962, seeks from this Court a decree declaring that the denial by the defendant, John Patterson as Governor for the State of Alabama, of plaintiff's application for reappointment as a Notary Public for the State of Alabama at large deprives him of the due process of law and the equal protection of the laws guaranteed by Title 42 U.S.C.A. §§ 1981 and 1983 and the Fourteenth Amendment to the Constitution of the United States. Plaintiff is a Negro attorney, practicing law in Montgomery, Alabama, and avers in his complaint that the denial of his application for reappointment as a Notary Public was solely by reason of his race or color. The plaintiff seeks an order of this Court restraining and enjoining the Governor of the State of Alabama from denying his application for reappointment as a Notary Public. The defendant by a motion filed herein on May 3, 1962, sought dismissal of the action. Upon this Court's denying the motion to dismiss, this case was submitted for a determination upon its merits. The submission is upon the pleadings, the stipulation of the parties filed herein on July 31, 1962, and the testimony taken by deposition.

The law of this case was declared by this Court in its order of June 2, 1962, which order was a denial of the defendant's motion to dismiss the complaint. As this Court stated in that order, the contention of the defendant

that this Court had no jurisdiction in a case such as this, failed to recognize that the governor of a state when he acts or fails to act in his official capacity must be and is always subject to the constitutional limitations imposed upon him by the Constitution of the United States. This Court further stated:

" * * * These constitutional limitations have been recognized many times by the Supreme Court of the United States. A recent case that had to do with this district is Gomillion v. Lightfoot, 364 U.S. 339, 347, [81 S.Ct. 125, 5 L.Ed.2d 110], at which time the Supreme Court stated:

" 'When a State exercises power wholly within the domain of state interest, it is insulated from federal judicial review. But such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right.' "

See also the opinion of the Supreme Court of the United States in Sterling v. Constantin, 287 U.S. 378, [53 S.Ct. 190, 77 L.Ed. 375], and in Faubus v. United States, 8 Cir., 254 F.2d 797. The pronouncements of the Supreme Court in the Sterling v. Constantin case, as those pronouncements relate to the jurisdiction of federal courts when a citizen seeks to invoke it to protect rights guaranteed by the Constitution of the United States, merit the attention of the attorneys for the defendant in this case. In the Sterling v. Constantin case, the Governor of Texas proclaimed martial law. Such proclamation was a discretionary decision. The Court stated:

" ' * * * The District Court had jurisdiction. The suit is not against the State. The applicable principle is that where state officials, purporting to act under state authority, invade rights secured by the Federal Constitution, they are subject to the process of the federal courts in order that the persons injured may have appropriate relief * * *. The Governor of the State, in this respect, is in no different position from that of other state officials.'

* * * * * *

" ' * * * [A]ppellants assert that the court was powerless thus to intervene and that the Governor's order had the quality of a supreme and unchallengeable edict, overriding all conflicting rights of property and unreviewable through the judicial power of the Federal Government.

" 'If this extreme position could be deemed to be well taken, it is manifest that the fiat of a state Governor, and not the Constitution of the United States, would be the supreme law of the land; that the restrictions of the Federal Constitution upon the exercise of state power would be but impotent phrases, the futility of which the State may at any time disclose by the simple process of transferring powers of legislation to the Governor to be exercised by him, beyond control, upon his assertion of necessity. Under our system of government, such a conclusion is obviously untenable. There is no such avenue of escape from the paramount authority of the Federal Constitution. When there is a substantial showing that the exertion of state power has overriden private rights secured by that Constitution, the subject is necessarily one for judicial inquiry in an appropriate proceedings directed against the individuals charged with the transgression. To such a case the federal judicial power extends (Art. III, § 2) and, so extending, the court has all the authority appropriate to its exercise. * * *'

" This case does not necessarily involve the question of 'compelling' the Governor, or any other State officer, to take affirmative action where such action is a discretionary matter. This case does necessarily involve the question of

whether or not a governor or any other state officer can, through the exercise of his discretion, arbitrarily and 'solely because of * * * race or color' deprive a citizen of the United States of his right to the equal protection of the laws. The entire question resolves itself to a matter of whether or not the Governor of the State in this instance acted in good faith or bad faith. It is a matter that this Court has jurisdiction over under the allegations in this complaint and it is a matter that this Court will inquire into under the allegations of this complaint. It may well be that the defendant in this case, as Governor of the State of Alabama, had good and sufficient reasons other than the race or color of this plaintiff for denying his appointment as Notary Public for the State of Alabama. If so, it will not be difficult for those reasons to be presented to the Court upon a hearing to be held in this matter."

■■ The evidence in his case is uncontroverted. From this evidence, this Court finds that the defendant as Governor of the State of Alabama is authorized by State statute to appoint or reappoint notaries public. Section 168, Constitution of the State of Alabama, and Title 40, §§ 1 through 23, Code of Alabama, 1940. The only part of the Governor's function concerning the appointment or removal of notaries public that is not a discretionary function is the "duty" to appoint notaries public at large. This duty is imposed by Title 40, § 21, Code of Alabama, 1940, which reads, in part, as follows:

"A competent number of notaries public for the state at large shall be appointed by the governor, who shall hold office for four years * * *."

Thus, insofar as we are now concerned, the appointment and/or reappointment of notaries public by the Governor of the State of Alabama is a discretionary act to be reviewed by the courts only in instances such as this one, where there is an allegation of the deprivation of constitutional rights. The evidence in this case demonstrates to this Court that the defendant's exercise of his discretion in this case was not an arbitrary action taken "solely because of * * * race or color." To the contrary, the evidence without dispute reflects that the defendant Governor of the State of Alabama had in this case what he considered to be good and sufficient reasons other than race or color of this plaintiff for denying to this plaintiff the reappointment he seeks. As a matter of fact, there is no evidence in this case tending to support or prove affirmatively the plaintiff's claim that he was arbitrarily denied due process of law and the equal protection of the laws, as guaranteed by the Fourteenth Amendment to the Constitution of the United States to all citizens, solely because of his race or color. The plaintiff in this instance fails to prove his allegations that the denial was in "bad faith," "arbitrary" and solely because of race or color.

The motion by the plaintiff seeking to have this Court enter an order or decree declaring that the denial by the defendant Governor of the State of Alabama of his application for reappointment as a Notary Public for the State of Alabama at large was solely because of his race or color is to be denied. The motion of the plaintiff seeking to have this Court enter a preliminary injunction enjoining and restraining the defendant Governor of the State of Alabama from denying the application of the plaintiff for reappointment as a Notary Public is likewise due to be denied.

In accordance with the foregoing, it is the ORDER, JUDGMENT and DECREE of this Court that the motion for a preliminary injunction filed herein by the plaintiff on March 28, 1962, wherein the plaintiff seeks to have this Court enjoin and restrain the defendant Governor of the State of Alabama from denying the application of the plaintiff for reappointment as a Notary Public, be and the same is hereby denied.

It is the further ORDER, JUDGMENT and DECREE of this Court that the motion of the plaintiff seeking to have this Court declare that the denial by the defendant Governor of the State of Alabama of plaintiff's application for reappointment as a Notary Public for the State of Alabama at large deprives him of due process of law and the equal protection of the laws, be and the same is hereby denied.

It is the further ORDER, JUDGMENT and DECREE of this Court that this cause be and the same is hereby dismissed.

It is the further ORDER, JUDGMENT and DECREE of this Court that the costs incurred herein be and they are hereby taxed against the plaintiff, for which execution may issue.