John AARON et al., Plaintiffs,

v.

William G. COOPER et al., Defendants.

Civ. A. No. 3113.

United States District Court
E. D. Arkansas, W. D.

Sept. 21, 1957.

Wiley A. Branton, Pine Bluff, Ark., Thurgood Marshall, New York City, for plaintiffs.

A. F. House, Little Rock, Ark., for defendants Cooper and others.

Osro Cobb, U. S. Atty., Little Rock, Ark., Donald B. MacGuineas, Chief, Gen. Litigation Section, Carl Eardley, Special Litigation Counsel, Civil Division, Dept. of Justice, Washington, D. C., James W. Gallman, Asst. U. S. Atty., Little Rock, Ark., for the United States, as amicus curiae.

Thomas Harper, Fort Smith, Ark., Kay Matthews, Walter L. Pope, Little Rock, Ark., for defendants Faubus, Clinger, and Johnson.

RONALD N. DAVIES, District Judge.

This cause having been heard upon separate applications of the United States, as amicus curiae, and of the plaintiffs for a preliminary injunction, and it appearing that:

1. Certain Negro students have been accepted for admission to the Little Rock Central High School and are eligible to attend classes there in accordance with a plan for gradual school integration, adopted by the Little Rock School District on May 24, 1955, and applicable at the senior high school level upon the opening of the school term in the fall of 1957; this Court, by decree and judgment of August 28, 1956, approved said plan of gradual school integration and its decree was affirmed by the United States Court of Appeals for the Eighth Circuit, 243 F.2d 361; and this Court on September 3, 1957, ordered the members of the Little Rock School Board and the Superintendent of the Little Rock Public Schools to comply forthwith with the plan of school integration approved by this Court's decree of August 28, 1956, 143 F.Supp. 855, as to senior high school classes in the Little Rock School District.

2. The foregoing orders of this Court confirmed and enforced the constitutional right of the Negro children involved to attend the Little Rock Central High School.

3. On September 2, 1957, upon orders of Defendant Orval E. Faubus, Governor of the State of Arkansas, and in conformity therewith Defendant General Sherman T. Clinger, Adjutant General of the State of Arkansas, and Defendant Lt. Col. Marion E. Johnson, of the Arkansas National Guard, stationed members of the Arkansas National Guard at the Little Rock Central High School and said Defendant Governor Faubus ordered that the Arkansas National Guard prevent and restrain by force the Negro students, eligible to attend classes in

said high school under the plan of school integration referred to above, from entering the school and attending classes, and since September 2, 1957, Defendants Governor Faubus, General Clinger and Lt. Col. Johnson have prevented said Negro students from attending such school by the armed force of the Arkansas National Guard.

4. The use of the Arkansas National Guard to deny access to the school by the Negro children upon the orders of the Defendant Governor Faubus obstructs and interferes with the carrying out and effectuation of this Court's orders of August 28, 1956, and September 3, 1957, contrary to the due and proper administration of justice.

5. Although the use of the armed force of the State of Arkansas to deny access to the school by Negro children has been declared by Governor Faubus to be required to preserve peace and order, such use of the Arkansas National Guard was and is unlawful, and in violation of the rights of the Negro children under the Fourteenth Amendment as determined by this Court.

6. An injunction is necessary in order to protect and preserve the judicial process of this Court, to maintain the due and proper administration of justice and to protect the rights guaranteed by the Constitution to the Negro children involved; now, therefore,

It is hereby ordered and decreed that Defendant Orval E. Faubus, Governor of the State of Arkansas, General Sherman T. Clinger, Adjutant General of the State of Arkansas, and Lt. Col. Marion E. Johnson of the Arkansas National Guard, their officers, agents, servants, employees, attorneys, all persons subject to their joint or several orders and directions, and all persons in active concert, participation or privity with them, be and they are hereby enjoined and restrained from hereafter (a) obstructing or preventing, by means of the Arkansas National Guard, or otherwise, Negro students, eligible under said plan of school integration to attend the Little Rock Central High School, from

attending said school or (b) from threatening or coercing said students not to attend said school or (c) from obstructing or interfering in any way with the carrying out and effectuation of this Court's orders of August 28, 1956, and September 3, 1957, in this cause, or (d) from otherwise obstructing or interfering with the constitutional right of said Negro children to attend said school.

Provided that this Order shall not be deemed to prevent Orval E. Faubus, as Governor of the State of Arkansas, from taking any and all action he may deem necessary or desirable for the preservation of peace and order, by means of the Arkansas National Guard, or otherwise, which does not hinder or interfere with the right of eligible Negro students to attend the Little Rock Central High School.

### Findings of Fact and Conclusions of Law

This cause having been heard upon the separate applications of plaintiffs and of the United States, as amicus curiae, for a preliminary injunction against defendants Orval E. Faubus, Governor of the State of Arkansas, Major General Sherman T. Clinger, Adjutant General of the State of Arkansas, and Lt. Col. Marion E. Johnson, Unit Commander of the Arkansas National Guard, the Court makes the following findings of fact and conclusions of law:

### Findings of Fact

1. This action was brought by minor citizens and residents of the city of Little Rock, Arkansas, through their legal representatives, against the initial defendants, the Little Rock School District, its Board of Directors, and its Superintendent as a class action seeking integration of public schools in the Little Rock School District.

2. On May 20, 1954 (three days after the Supreme Court's first decision in the public school segregation cases, Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873), the Little Rock School Board released a public statement to the effect that it was the Board's

responsibility to comply with federal constitutional requirements and they intended to do so when the Supreme Court of the United States outlined the method to be followed; and that during this interim period the Board would develop school attendance areas consistent with the location of white and colored pupils with respect to present and future facilities in the School District; would make the necessary revisions in pupil records in order that transition to an integrated school system might serve the best interest of the School District; and would make research studies needed for the implementation of a sound school program on an integrated basis.

3. The School Board instructed the superintendent, defendant Virgil Blossom, to prepare a plan for the integration of the schools in the School District. Such a plan was prepared and approved by the Board on May 24, 1955. This plan is set forth verbatim in this Court's opinion entered in this case on August 27, 1956 (Aaron v. Cooper, 143 F.Supp. 855, 859), and the statement of the plan there set forth is incorporated herein by reference. Briefly, the plan provided for a three-phase program of integration. Phase 1 begins at the senior high school level (grades 10–12) and is scheduled to start in the fall of 1957 upon the completion of a new senior high school building. Phase 2 begins at the junior high school level (grades 7–9) and would start following successful integration at the senior high school level (estimated at two to three years). Phase 3 begins at the elementary level (grades 1–6) and would start after successful completion of phrases 1 and 2. Complete integration is planned to be effected not later than 1963.

4. Subsequent to adoption of the plan, defendant Blossom read and explained it to approximately 200 groups in an effort to obtain public acceptance of its provisions and the resulting orderly integration of the schools. By its plan the School Board is seeking to integrate its schools and at the same time maintain and improve the quality of education available at these schools. Its objectives are to provide the best possible education that is economically feasible, to consider each child in the light of his individual ability and achievement, to provide necessary flexibility in the school curriculum from one attendance area to another, to select, procure, and train an adequate school staff, to provide the opportunity for children to attend school in the attendance area where they reside, to attempt to provide information necessary for public understanding, acceptance, and support, and to provide a "teachable" group of children for each teacher.

5. At the present time there are four senior high schools in the School District. Central High School has been an all-white high school and accommodates approximately 2,000 students. Technical High School has been an all-white school and will accommodate approximately 250 students. Horace Mann High School has been an all-Negro school and will accommodate 925 students. Construction of the Hall High School, which accommodates 925 students, has recently been completed and it is in operation this current term.

6. In accordance with its plan, the School Board has reorganized its attendance areas. Under the plan Technical High School will remain a city-wide school for all students, but Central, Horace Mann, and Hall High Schools will each have separate attendance areas. There are two Negro students at the senior high school level residing in the Hall High School attendance area, and there are numbers of Negro and white students residing in the Central and Horace Mann High School attendance areas.

7. In preparing for integration, the school authorities have established attendance areas, studied the aptitudes of the children, started an in-service program for staff members, a program of information to members of the community, and other appropriate steps.

8. As stated in the plan, the School Board is prepared to start integration

in the fall of 1957 at the high school level. Its reason for starting at that level is that fewer students, teachers, buildings, etc., will be involved and the school authorities hope to be able to learn by experience and to be better able to enter the next phase of the plan.

9. The defendant school authorities have worked diligently in a good faith effort to prepare and to effectuate a plan of integration that will be to the best interest of all parties and to the public. Superintendent Blossom is a highly qualified and experienced school administrator and has given much thought and study to the many problems relating to integration. He has had the cooperation of the School Board in his effort to achieve integration without lowering the quality of education offered to all the school children.

10. On August 28, 1956, this Court, after a full trial, entered its decree and judgment approving the plan of school integration adopted by the School District on May 24, 1955, and ordering that jurisdiction of this case be retained for the purpose of entering such other and further orders as might be necessary to obtain the effectuation of the plan. On April 26, 1957, that decree and judgment was affirmed by the United States Court of Appeals for the Eighth Circuit (243 F.2d 361).

11. The City of Little Rock has a long history of peaceful and amicable relations between the white and Negro races. Approximately 20 percent of the population is colored. The Negroes reside in scattered sections of the city, and some neighborhoods are composed of both white and colored residents. For at least twenty-five years there has been no reported incident of violence arising from racial tension, either between adults or between children of school age. In January 1956, the city public transportation system abolished the previously existing arrangement of seating whites and Negroes in separate sections of the buses. No incident of violence as a result of this change has come to the attention of the city authorities.

12. In preparation for the carrying out of the school plan at the senior high school level at the opening of the fall term, 1957, the superintendent and the principals of the senior high schools arranged for colored students who reside in the Central High School attendance area to elect whether or not they desired to attend that school. Approximately 40 to 50 such students elected to attend that school. Their records were carefully studied by the school authorities. They approved the applications of 13 of these colored students on the basis of their scholastic ability, their general deportment, their character, and their health, determining that these 13 students were particularly well suited to make the adjustment involved in their attending a school theretofore composed solely of white children. The superintendent and the high school principals held several meetings with these students and their parents to prepare them for the adjustments necessary to their attending Central High School. All steps necessary to the transfer of these students and their enrollment in Central High School were completed before the opening of the fall term, 1957. Four of these 13 colored students chose not to transfer to Central High School. Consequently, the carrying out of the school plan for this term involved the placing of only 9 colored students in a student body of approximately 2,000. The faculty and the white student body at Central High School were prepared to accept the 9 colored children as fellow students.

13. On the evening of September 2, 1957, the Governor of Arkansas and the Adjutant General of Arkansas, who is the commanding officer of the Arkansas National Guard (acting under orders issued to him by the Governor), stationed units of the Arkansas National Guard at the Little Rock Central High School. Those guardsmen were under the command of Lt. Col. Marion E. Johnson. On September 2, 1957, the Governor of Arkansas issued to the Adjutant General an order directing him to place off limits to white students those schools for colored

students and to place off limits to colored students those schools theretofore operated and recently set up for white students; and that this order was to remain in effect until the demobilization of the Guard or until further orders. This order was in effect at the time of the hearing in this case on September 20, 1957.

14. Up to this time, no crowds had gathered about Central High School and no acts of violence or threats of violence in connection with the carrying out of the plan had occurred. Nevertheless, out of an abundance of caution, the school authorities had frequently conferred with the Mayor and Chief of Police of Little Rock about taking appropriate steps by the Little Rock police to prevent any possible disturbances or acts of violence in connection with the attendance of the 9 colored students at Central High School. The Mayor considered that the Little Rock police force could adequately cope with any incidents which might arise at the opening of school. The Mayor, the Chief of Police, and the school authorities made no request to the Governor or any representative of his for State assistance in maintaining peace and order at Central High School. Neither the Governor nor any other official of the State government consulted with the Little Rock authorities about whether the Little Rock police were prepared to cope with any incidents which might arise at the school, about any need for State assistance in maintaining peace and order, or about stationing the Arkansas National Guard at Central High School.

15. The fall term at Central High School began on September 3, but none of the 9 eligible colored students appeared at the school that day because they had been advised not to do so since the National Guard was stationed at the school. On the evening of September 3, however, these students were advised by school officials to attend Central High School the next morning.

16. On the morning of September 4, 1957, the units of the National Guard at the Central High School, acting pursuant to the Governor's order, stood shoulder to shoulder at the school grounds and thereby forcibly prevented the 9 Negro students, who were eligible under the School Board's plan to attend that school, from entering the school grounds. At that time, a crowd of spectators congregated across the street from the school grounds. No acts of violence were committed or threatened by the crowd, although some of them made rude and disparaging remarks about the colored students. The guardsmen made no effort to disperse the crowd or to assist and protect the colored students in their efforts to enter the school. They did not prevent any white students from entering the school. The evidence indicates that the Arkansas National Guard, which is composed of 10,500 men, could have maintained peace and order without preventing the eligible colored students from attending Central High School.

17. On September 3, 1957, the Court, upon consideration of a Petition for Instruction filed in this cause on that date by the defendant school authorities, ordered that they integrate, in accordance with their plan approved by the Court, the senior high school grades in the School District forthwith. On September 7, 1957, the Court denied the application of the School District for a stay of the Court's order of September 3.

18. Since September 2, and up to the time of the hearing in this Court on September 20, 1957, the units of the Arkansas National Guard have remained at Central High School and have continued to prevent eligible Negro students from attending the school, pursuant to the order issued to them by the Governor of Arkansas through the Adjutant General of Arkansas. The acts of Governor Faubus, General Clinger, and Lt. Col. Johnson in preventing, by means of the Arkansas National Guard, eligible Negro students from attending Central High School directly obstruct and interfere with the carrying out and effectuation of this Court's orders of August 28, 1956, and September 3, 1957, contrary to the

due and proper administration of justice.

19. The minor plaintiffs and the other Negro students who are eligible under the School District's plan to attend Central High School have suffered immediate and irreparable injury from said acts of Governor Faubus, General Clinger, and Lt. Col. Johnson, in that the colored students were forcibly deprived of their right to attend Central High School in accordance with the School Board's plan, this Court's orders of August 28, 1956, and September 3, 1957, and the Federal Constitution. The minor plaintiffs and other eligible Negro students on whose behalf this suit is brought have no adequate legal remedy and are entitled to a preliminary injunction against Governor Faubus, General Clinger, and Lt. Col. Johnson restraining them from obstructing or preventing, by means of the Arkansas National Guard or otherwise, eligible Negro students from attending Central High School, from threatening or coercing said students not to attend said school, from otherwise obstructing or interfering in any way with the carrying out and effectuation of this Court's orders of August 28, 1956, and September 3, 1957, and from otherwise obstructing or interfering with the constitutional right of said Negro students to attend said school.

20. Such injunction is necessary in order to protect and preserve the judicial process of the Court, to maintain the due and proper administration of justice, and to protect the constitutional rights of the minor plaintiffs and other eligible Negro students on whose behalf this suit is brought.

## Conclusions of Law

1. This Court has jurisdiction of the subject matter of this action and of the parties.

2. The Governor of Arkansas, as Chief Executive and Commander-in-Chief of its military forces, has a vital interest in the maintenance of law and order and broad discretionary powers to suppress insurrection and to preserve the peace. Article 6, Section 6, of the Constitution of the State expressly provides that:

"The Governor shall be commander-in-chief of the military and naval forces of the State, except when they shall be called into the actual service of the United States."

Article 6, Section 7, provides that the Governor "shall see that the laws are faithfully executed".

As the Chief Executive of the state, he is appropriately vested with the discretion to determine whether an exigency requiring military state aid for that purpose has arisen.

3. The Governor does not, however, have lawful authority to use the National Guard to deprive the eligible colored students from exercising their right to attend Central High School, which right is guaranteed by the Federal Constitution, the School District plan of integration, and the Court's orders entered in this cause. If it be assumed that the Governor was entitled to bring military force to the aid of civil authority, the proper use of that power in this instance was to maintain the Federal Court in the exercise of its jurisdiction, to aid in making its process effective and not to nullify it, to remove, and not to create, obstructions to the exercise by the Negro children of their rights as judicially declared.

4. This action is not a suit against the State of Arkansas. It does not seek to invalidate any provision of Arkansas statute or of the Arkansas Constitution. It merely seeks to enjoin the Governor and other officials of the state from committing acts beyond their lawful authority and contrary to the Federal Constitution.

5. The acts of defendants Governor Orval E. Faubus, Governor of the State of Arkansas, General Sherman T. Clinger, Adjutant General of Arkansas, and Lt. Col. Marion E. Johnson, Unit Commander of the Arkansas National Guard, in forcibly preventing colored stu-

dents, who are eligible under the School Board's plan to attend Central High School, from doing so are beyond their lawful authority. Said acts unlawfully obstruct and interfere with the carrying out and effectuation of the Court's orders of August 28, 1956, and September 3, 1957, contrary to the due and proper administration of justice; and they violate the constitutional rights of said colored children.

6. An injunction against said Governor Faubus, General Clinger, and Lt. Col. Johnson is necessary in order to protect and preserve the judicial process of the Court, to maintain the due and proper administration of justice, and to protect the constitutional rights of the minor plaintiffs and other eligible Negro students on whose behalf this suit is brought.