312 F.Supp. 269 (1970)
Caroline HARVEST, Mosella Harvest and Phillip Harvest, minors, by Mose Harvest, their father and next friend, and Sally Marie Rhodes and Lillie Francine Rhodes, minors, by John Rhodes, their father and next friend, and Mary Elizabeth Curtis, a minor, by Johnye M. Curtis, her mother and next friend, Plaintiffs,
v.
BOARD OF PUBLIC INSTRUCTION OF MANATEE COUNTY, FLORIDA, a public body corporate, and J. Hartley Blackburn, Superintendent of Schools of Manatee County, Florida, and Walter W. Council, Chairman of the Board of Public Instruction of Manatee County, Florida, Defendants.
No. 65-12 Civ. T.
United States District Court, M. D. Florida, Tampa Division.
February 26, 1970.
Order Appointing and Designating April 6, 1970.
Order to Show Cause April 6, 1970.
On Motion to Continue Hearing April 7, 1970.
Judgment of Civil Contempt April 11, 1970.
On Motion to Transfer April 11, 1970.
Additional Judgment of Civil Contempt April 11, 1970.
*270 *271 Earl M. Johnson, Jacksonville, Fla., Drew S. Days, III, New York City, for plaintiffs.
Kenneth W. Cleary, Dye, Dye, Smith, Cleary, Scott & Matthews, Bradenton, Fla., for defendants.
Jerome Pratt, Palmetto, Fla., for Intervenors.
Order Appointing and Designating the United States as Amicus Curiae April 6, 1970.
On Motion to Transfer to Supreme Court of United States April 11, 1970.

ON MOTIONS FOR NEW TRIAL AND STAY
KRENTZMAN, District Judge.
On February 10, 1970 Intervenors Mrs. Maryann Mona and others erroneously describing themselves as "Interpleaders," filed a motion for new trial and rehearing of the Court's order entered January 29, 1970. Reduced of surplusage, the basic points raised in the motion are as follows:
1. The "Order was silent as to the disposition of the validity of Florida Statute 230.232(2) [F.S.A.]," which statute requires the school officials "to consider the education, health and welfare of the individual pupil in a particular school district as a primary consideration" in school assignment.
2. The Order "over-extended [the Court's] authority in ordering a plan which would require enforced bussing" by forcing the defendants to "violate the 1964 Civil Rights Act," which "specifically prohibits the rights of any agency of the government, including all courts thereof, from ordering any plan which would require a forced bussing situation."
3. "Prior to the Order heretofore entered by this Court there had been no racial disturbances or riots in the community and subsequent to said Order we have had constant disturbances in the racially integrated areas in Manatee County which the Interpleaders [(sic)] believe have occurred as a result of the Order of this Court."
4. The "Order of this Court fails to take into consideration or was silent upon whether or not Manatee did in fact operate its school system without regard to color or creed of its students."
On February 20, 1970, intervenors filed an amendment to the motion for new trial and rehearing.
On February 24, 1970, defendants filed a Notice of Appeal of the Order of January 29, 1970. Defendants also filed a motion to stay the order pending the appeal, and attached a memorandum in support of the motion.

INTERVENORS' MOTION FOR NEW TRIAL AND REHEARING

Point 1.
This allegation is that the Court failed to consider the validity of part of Florida's Pupil Assignment Law. Apparently intervenors contend there is some sort of conflict between that law and the Court's order of January 29, 1970, and that therefore the defendants are placed in a dilemma, not knowing who to obey.
While there is no real conflict suggested to the Court, if in fact there is, then such statute would have to be of no effect to the extent that it frustrates the implementation of a constitutional mandate.
"The school board protests that it is powerless to do what we ask because of state laws. * * * Of course, one answer to the argument that state *272 laws prevent the board from taking the necessary affirmative steps is that local * * * statutes may not be interposed to frustrate a constitutional mandate. * * * a state law is invalid to the extent that it frustrates the implementation of a constitutional mandate." United States v. Greenwood Municipal Separate School Dist., 406 F.2d 1086, 1093 (5 Cir. 1969); see In re Advisory Opinion to the Governor, 150 So.2d 721, 722 (Fla. 1963); Advisory Opinion of Attorney General of Florida, Feb. 2, 1970.
It has been the law of the land for over 150 years that when federal court orders conflict with state law, the federal mandates prevail. Martin v. Hunter's Lessee, 1 Wheat. 304, 4 L.Ed. 97 (1816). Therefore, assuming that Section 230.232(2), Florida Statutes, F. S.A., in any way interfered with the Court's order of January 29, 1970, the Court did not have to make a ruling thereon, because it was and is crystal clear that the defendants are to obey the orders of this Court.

Point 2.
Intervenors' second point is that Section 407(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000c-6(a), the so-called antibussing proviso, prohibits the Court from ordering a desegregation plan into effect which entails bussing. That proviso reads:
"* * * provided that nothing herein shall empower any official or court of the United States to issue any order seeking to achieve a racial balance in any school by requiring the transportation of pupils or students from one school to another or one school district to another in order to achieve such racial balance, or otherwise enlarge the existing power of the court to insure compliance with constitutional standards."
Intervenors' reliance on Section 407(a) is misplaced; Section 407(a) does not limit the power of this Court to disestablish school segregation, and the courts have been holding so for at least four years. The most cursory examination of Section 407(a) reveals:

A. SECTION 407(a) DOES NOT LIMIT THE POWERS OF FEDERAL COURTS
The anti-bussing proviso does not on its face prohibit the courts from doing anything, but only stresses that the Civil Rights Act is not to be construed as a conferral of new power.
"The language of the proviso indicates that its purpose was to prevent the implication that Section 407(a) enlarged the powers of the federal courts. * * * The proviso merely explains that Section 407(a) is not to be construed to enlarge the powers of the courts; it does not limit those powers." Keyes v. School Dist. Number One, Denver, Colo., 303 F.Supp. 289, 298 (D.Colo.1969), preliminary injunction stayed (10 Cir. 1969), stay of preliminary injunction vacated, 396 U.S. 1215, 90 S.Ct. 12, 24 L.Ed.2d 37 (1969).
"In other words," the Fifth Circuit has said, "the Act is not to be construed as authorizing a statutory duty to reduce [racial] imbalance by bussing." United States v. Jefferson County Board of Education, 372 F.2d 836, 880 n. 96 (5 Cir. 1966).
The legislative history of the Civil Rights Act also demonstrates that the anti-bussing proviso does not curtail the powers of the courts. Senator Humphrey, the Act's floor leader as a bill, said:
"This addition seeks simply to preclude an inference that the title confers new authority to deal with `racial imbalance' in schools, and should serve to soothe fears that Title IV might be read to empower the Federal Government to order the bussing of children around a city in order to achieve a certain racial balance or mix in schools." United States v. Jefferson County Board of Education, supra, at 881.

*273 B. SECTION 407(a) DOES NOT APPLY TO THE INSTANT CASE
Section 407(a), by its very terms, refers to actions brought under the Civil Rights Act of 1964. It has no application to actions not brought under that act. Keyes v. School Dist. Number One, etc., supra, 303 F.Supp. 289, 298. The present case is brought pursuant to 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983, not the Civil Rights Act of 1964. The Court relies for its authority in issuing its desegregation orders not on the Act but on its inherent powers to correct deprivations of constitutional rights. "[T]he equitable powers of the courts exist independently of the Civil Rights Act of 1964." United States v. Jefferson County Board of Education, supra, 372 F.2d at 880. In other words, "The equitable powers of the courts in directing compliance with constitutional mandates exist independent of the 1964 Civil Rights Act." Keyes v. School Dist. Number One, etc., supra, 303 F.Supp. 289, 298.

C. SECTION 407(a) APPLIES ONLY TO BUSSING TO ACHIEVE RACIAL BALANCE
The anti-bussing proviso applies only to a special type of bussing, not bussing in general. In particular, the proviso applies only where the sole purpose of the court-ordered bussing is to achieve a racial balance, that is, to arbitrarily obtain a certain racial mix, for the sole purpose of having a certain percentage of black and white students in a particular school. The provision "applies * * * only to transportation across school lines to achieve racial balance." United States v. Jefferson County Board of Education, supra, 372 F.2d at 880. It follows that courts may order bussing where the purpose is not racial balancewhere the purpose is, for example, to end state-imposed segregation or its vestiges.
"Defendants next contend that they have no constitutional duty to bus pupils, in the District, to achieve a racial balance. It is true that 42 U.S.C. § 2000c-6 withholds power from officials and courts of the United States to order transportation of pupils from one school to another for the purpose of achieving racial balance. However, this question is not before us. Although we recognize that past residential segregation itself, in the District, severely unbalanced racially the school population, the district court's judgment is directed at the unlawful segregation that it found to be unconstitutional, by means of a plan which to some extent will distribute pupils throughout the District, presumably by bus. This is not done to achieve racial balance, although that may be a result, but to counteract the legacy left by the Board's history of discrimination." United States v. School Dist. 151 of Cook County, Ill., 404 F. 2d 1125, 1130 (7 Cir. 1968).
"But there is nothing in the language of the Act or in the legislative history that equates corrective acts to desegregate or to integrate a dual school system initially based on de jure segregation with acts to bring about a racial balance in a system based on bona fide neighborhood schools." United States v. Jefferson County Board of Education, supra, 372 F.2d at 886.
This Court has stressed in its orders and in open court that the purpose of its orders is not to achieve a racial balance but to bring an end to the present dual system of school existing in Manatee County. As the file in this case clearly shows, this dual system is the result of a state system of segregation. Consequently, the anti-bussing proviso does not prevent the Court from taking all necessary steps, including issuing orders that entail bussing, to bring an end to Manatee's dual school system. United States v. Jefferson County Board of Education, supra, 880 n. 96; United States v. School Dist. 151 of Cook County, Ill., 286 F.Supp. 786, 799 (N.D.Ill.1968), affirmed 404 F.2d 1125 (7 Cir. 1968); Keyes v. School *274 Dist. Number One, etc., 303 F.Supp. 289, 298-299.

Point 3.
Intervenors' third point is that community disruption in Manatee County mandates that this Court modify its Order. Assuming intervenors' allegations of racial disturbances to be true, intervenors have raised no contention worthy of legal consideration, for "law and order are not here to be preserved by depriving the Negro children of their constitutional rights." Cooper v. Aaron, 358 U.S. 1, 16, 78 S.Ct. 1401, 1409, 3 L. Ed.2d 5 (1958). Over 50 years ago an argument similar to intervenors' was propounded to the Supreme Court. That Court said:
"It is urged that this proposed segregation will promote the public peace by preventing race conflicts. Desirable as this is, and important as is the preservation of the public peace, this aim cannot be accomplished by laws or ordinances which deny rights created or protected by the federal Constitution." Buchanan v. Warley, 245 U.S. 60, 81, 38 S.Ct. 16, 20, 62 L.Ed. 149 (1917).

Point 4.
Intervenors' final contention in moving for a new trial and rehearing of the Court's order of January 29, 1970, is that the Court did not consider whether Manatee County was presently operating a unitary school system. The point is not borne out by the record. At the hearing in this cause held on January 26, 1970, the Court informed the parties that Manatee County did not have a unitary system (otherwise there would have been no reversal) and orally denied the defendants' motion for a finding that Manatee's schools were presently being operated on a unitary basis. And on Page 3 of the order of January 29, 1970, the Court said:
"As to faculty, the system is not unitary. Teachers are not assigned so that the percentage of black teachers at each school is substantially the percentage of black teachers throughout the system at that level, as is required by Singleton. As to students, the system is unitary as to secondary schools, with the exception of Lincoln Middle School, which is all black. The elementary schools are segregated; it is the elementary schools which most fall short of the law of the land and which account for Manatee's status as a dual system. Three elementary schools (Bradenton, Memorial, and Tillman) are virtually all black. Ten elementary schools (Anna Maria, Duette, Myakka, Bayshore, Daughtrey, Ellenton, Miller, Palma Sola, Prince, Samoset) are virtually all white."

INTERVENORS' AMENDMENT TO MOTION FOR NEW TRIAL AND REHEARING
Intervenors' amendment to the motion presents no grounds not in the motion, except for a citation to the case of Ellis v. Board of Public Instruction of Orange County, 423 F.2d 203, (5 Cir. Feb. 17, 1970). Intervenors' attention is drawn to footnote 7 to that opinion, which limits the applicability of the case to the particular fact situation in Orange County and acknowledges that other plans may be appropriate for other county school systems where the facts are different.

DEFENDANTS' MOTION FOR STAY OF ORDER OF JANUARY 29, 1970 PENDING APPEAL
Defendants have moved to stay the Court's order of January 29, 1970 pending appeal.
The determination of whether to grant a stay rests in the Court's discretion. Taylor v. Board of Education of City School Dist. of City of New Rochelle, 195 F.Supp. 231, 238 (S.D.N.Y. 1961), affd. 294 F.2d 36 (2 Cir. 1961); Holmes v. Danner, 191 F.Supp. 394 (M. D.Ga.1961). In cases where damage to the public interest is threatened, United States v. Mills, 187 F.Supp. 314, 320 (D.Md.1960), or involving the constitutional rights of school children to attend *275 integrated schools, Goins v. County School Board of Grayson County, 282 F. 2d 343 (4 Cir. 1960); Lucy v. Adams, 350 U.S. 1, 76 S.Ct. 33, 100 L.Ed. 3 (1955); Tillman v. Bd. of Pub. Instr. of Volusia County, No. 24501 Civ.J., M.D. Fla. (Order denying motion to stay pending appeal entered on February 2, 1970); Swann v. Charlotte-Mecklenburg Board of Education, 311 F.Supp. 265, W.D.N.C. (Order of February 5, 1970), the courts are reluctant to stay mandatory injunctions requiring desegregation. The Fifth Circuit has made its attitude toward stays in school segregation cases clear in Singleton v. Jackson Municipal Separate School Dist., 419 F. 2d 1211 (December 1, 1969): "The shift is from a status of litigation to one of unitary operation pending litigation."
Wherefore, it is
Ordered, adjudged and decreed:
1. Intervenors' motion for new trial and rehearing are hereby denied.
2. Defendants' motion for a stay of the order of January 29, 1970 is hereby denied. The Court expects full compliance with that order and also expects compliance with the order of February 10, 1970, requiring defendants to submit a Notice of Compliance with the order of January 29, 1970, no later than April 15, 1970.
3. Jurisdiction is retained for such further proceedings and orders as may be necessary in this cause.

ORDER APPOINTING AND DESIGNATING THE UNITED STATES AS AMICUS CURIAE
Upon consideration of the actions being taken in the State of Florida that affect the order entered in this cause on the 29th day of January, 1970, this Court is of the opinion that the maintenance and preservation of the due administration of justice and the integrity of the judicial process requires that the public interest be represented in these proceedings. To this end, this Court is of the opinion that it is now appropriate and necessary that the United States should be designated to appear and participate in this action before this Court and to accord this Court the benefit of its views and recommendations, with the right to submit proceedings, evidence, arguments, and briefs, the right to move for injunctive and other necessary and proper relief, and the right to initiate such further proceedings as may be necessary and appropriate. Faubus v. United States, 254 F.2d 797 (8th Cir., 1958), cert. denied 358 U.S. 829, 79 S.Ct. 49, 3 L.Ed.2d 68; Bush v. Orleans Parish School Board, 188 F.Supp. 916 (E.D.La.1960), affirmed 365 U.S. 569, 81 S.Ct. 754, 5 L.Ed.2d 806; Bush v. Orleans Parish School Board, 190 F. Supp. 861 (E.D.La.1960), affirmed City of New Orleans, La. v. Bush, 366 U.S. 212, 81 S.Ct. 1091, 6 L.Ed.2d 239; Bush v. Orleans Parish School Board, 191 F. Supp. 871 (E.D.La.1961), affirmed Denny v. Bush, 367 U.S. 908, 81 S.Ct. 1917, 6 L.Ed.2d 1249, rehearing denied 368 U. S. 870, 82 S.Ct. 26, 7 L.Ed.2d 71; United States v. Barnett, 330 F.2d 369 (5th Cir. 1962), decision on certified complaint 376 U.S. 681, 84 S.Ct. 984, 12 L. Ed.2d 23; Lee v. Macon County Board of Education, 231 F.Supp. 743 (M.D. Ala.1964); Hadnott v. Amos, 291 F. Supp. 309 (M.D.Ala.1968).
In accordance with the foregoing and for good cause, it is the order, judgment and decree of this Court that the United States of America be and is hereby designated to appear and participate in this action before this Court as amicus curiae, with the right as such to submit pleadings, evidence, arguments, and briefs, to move for injunctive and other necessary and proper relief, and to initiate such further proceedings that may be necessary and appropriate.
It is the further order of this Court that the Attorney General of the United States, and such attorneys in the United States Department of Justice as he may designate, be and are hereby appointed to appear and participate in behalf of the United States in this action.

*276 ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER
This Court having on January 29, 1970, issued its order and it appearing from the news media, and more specifically the April 6, 1970, issue of the Tampa Tribune and the St. Petersburg Times, that the Governor of the State of Florida, Claude R. Kirk, Jr., has suspended the School Board and Superintendent of Schools of Manatee County, Florida, in order to avoid implementation of the order of this Court dated January 29, 1970, and it further appearing that the said Claude R. Kirk, Jr., while having notice of the terms of the order of January 29, 1970, has violated the same;
IT IS ORDERED:
1. That Claude R. Kirk, Jr., his officers, agents, employees, and all persons in active concert or participation with him, be, and they are, temporarily restrained from failing or refusing to resume full operation of the Manatee County Public School System in conformity with the January 29, 1970, order of this Court, such operation to begin instanter.
2. That Claude R. Kirk, Jr., his officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, are hereby enjoined and restrained from any activity or conduct which will serve in any way or fashion to impede the implementation of the desegregation plan as ordered, or which will in any way or fashion cause disturbance or hinder the implementation of said plan, or which will serve to impede or hinder the said defendants, the Manatee County Board of Public Instruction and the Manatee Superintendent of Schools, and their employees, in any way or fashion in the performance of their duties in the implementation of the plan, and from failing or refusing to execute any orders, or in any manner failing or refusing to resume full operation of the Manatee County Public School System in conformity with the January 29, 1970, order of this Court, and he is ordered to take such steps and issue such orders as may be necessary to carry out the intent of the decree of this Court on January 29, 1970.
3. That on April 7, 1970, at 3:30 o'clock p. m., in the Courtroom of this Court at Tampa, Florida, Claude R. Kirk, Jr., appear and show cause, if any he has, why he should not be held in civil contempt by reason of his failure to obey the order of this Court of January 29, 1970, and why this Court should not enter such other orders as may be necessary and appropriate to insure the full implementation of its orders in this cause.
It is further ordered that the United States Marshal serve a copy of this order on the above Claude R. Kirk, Jr., FORTHWITH.

ON MOTION TO CONTINUE HEARING
At hearing on April 7, 1970, counsel for respondent, Claude R. Kirk, Jr., Governor, moved that the hearing be continued because of the inability of the Governor to attend and counsel's inability to prepare for the hearing.
The Court emphasizes that its order of January 29, 1970, delayed the implementation of the school plan beyond February 1, 1970, in order to give the Manatee County School Board time to properly plan for and implement the order. The order of January 29, 1970, directed the school board to implement the plan on or before April 6, 1970; delay after January 29th was at the option of the school officials and the Court makes it clear that there must be no further delay. At hearing it was established and the Court finds, that respondent Claude R. Kirk, Jr., as Governor, has actual notice of the Court's order of April 6, 1970, and has not to the date of the entry of this order complied therewith. By his action in effectively suspending *277 the School Board of Manatee County, Florida, and substituting himself as the School Board, the respondent, Claude R. Kirk, Jr., under the provisions of Rule 25(d), Federal Rules of Civil Procedure, became responsible for the implementation of the Court's order of January 29, 1970. Being advised, it is
ORDERED and ADJUDGED as follows:
1. The restraining order of this Court dated April 6, 1970, is continued in full force and effect.
2. The Board of Public Instruction of Manatee County, Florida, and the Superintendent of Schools of Manatee County, if they have not already done so, are directed to immediately resume control and supervision of the public school system of Manatee County, Florida, and in accordance with their respective obligations under the Constitution and the Laws of the United States of America are again directed to operate said system in compliance with the order of this Court dated January 29, 1970, as soon as possible and no later than Thursday, April 9, 1970, and to disregard any directions or instructions to the contrary from respondent Claude R. Kirk, Jr., his officers or agents.
3. Claude R. Kirk, Jr., his officers, servants, employees, agents and attorneys are hereby enjoined and restrained from taking and continuing any conduct or action and from taking or continuing to take any action which will serve to impede, hinder, intimidate or frustrate the said defendants, the Manatee Board of Public Instruction and said Superintendent of Public Instruction, their employees and agents, in the performance of their duties as aforesaid.
4. A continued hearing in this cause will be held at 2:00 p. m. in the Courtroom of this Court at Tampa, Florida, on Friday, April 10, 1970, at which time the defendants, members of the Board of Public Instruction of Manatee County and the Superintendent of Schools of Manatee County, shall appear and report on the status of the implementation of said plan and their activities relating thereto and Claude R. Kirk, Jr., shall personally appear and show cause, if any he has, why he should not be held in civil contempt by reason of his failure to obey the orders of this Court of January 29, 1970, April 6, 1970 and this order.
Copies of this order shall be provided to all parties by the Clerk of this Court.

JUDGMENT OF CIVIL CONTEMPT
This Court, having on April 7, 1970, issued an Order requiring Claude R. Kirk, Jr., Governor of the State of Florida, to personally appear before this Court on April 10, 1970, at 2:00 p. m., to show cause, if any he has, why he should not be held in civil contempt of the Orders entered in this action on January 29, 1970, and April 6, 1970 and Claude R. Kirk, Jr., having been given notice of the Order to Show Cause, and it having been called for hearing at 2:00 p. m. on April 10, 1970, and Claude R. Kirk, Jr., having failed to personally appear, but being represented by counsel, and the Court having heard and received evidence on behalf of the United States and of the plaintiffs, and having deliberated and considered the legal issues involved, now renders its Findings of Fact and Conclusions of Law and Judgment as follows:

FINDINGS OF FACT
1. On January 29, 1970, this Court entered an Order directing the desegregation of the Manatee County Public School System and approving a desegregation plan requiring implementation on or before April 6, 1970;
2. Pursuant to this Court's Order, administrative officials of the Manatee County Board of Public Instruction made extensive preparation for the implementation of the plan of school desegregation directed by the Court, including the movement of books, furniture and supplies, and the reassignments of students and faculty personnel;
3. On April 5, 1970, Claude R. Kirk, Jr., having full knowledge of the Order *278 of this Court, entered January 29, 1970, did issue an Executive Order suspending the Board of Public Instruction of Manatee County, Florida, and its Superintendent of Schools for the purpose and with the effect of frustrating the said Order of this Court;
4. On April 6, 1970, this Court entered an Order enjoining and restraining Claude R. Kirk, Jr., his officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them, from any activity or conduct which would serve in any way or fashion to impede the implementation of the plan of school desegregation ordered by this Court;
5. On April 7, 1970, this Court entered a further Order incorporating the terms and provisions of the Order entered on April 6, 1970, and further enjoining and restraining Claude R. Kirk, Jr., his officers, servants, employees, agents, and attorneys from any action which would impede, hinder, intimidate or frustrate the Manatee Board of Public Instruction and their Superintendent of Schools and their employees and agents from the performance of their duties in accordance with the Order of this Court entered January 29, 1970;
6. On April 8, 1970, with full knowledge of the existence and terms of this Court's Orders of April 6, 1970, and April 7, 1970, Claude R. Kirk, Jr., issued another executive order resuspending the Manatee Board of Public Instruction and their Superintendent;
7. Pursuant to each executive order, Claude R. Kirk, Jr., directed and instructed his agents and employees to assume control and operation of the Manatee County Public School System and to return the school system to the plan of operation in effect prior to this Court's Order of January 29, 1970. Governor Kirk further instructed law enforcement officials under his control to prevent and deter any interference with the activities of his agents while operating the Manatee County Public School System;
8. The continued conduct of Claude R. Kirk, Jr., and his agents has prevented and impeded the implementation of this Court's Order of January 29, 1970.

CONCLUSIONS OF LAW
1. This Court has jurisdiction of the person of Claude R. Kirk, Jr.
2. Claude R. Kirk, Jr. is in civil contempt of the Orders entered by this Court on April 6, 1970, and April 7, 1970.

JUDGMENT OF CIVIL CONTEMPT
Upon the foregoing Findings of Fact and Conclusions of Law,
IT IS ORDERED, ADJUDGED AND DECREED THAT:
Claude R. Kirk, Jr. is in civil contempt of the orders of this Court dated April 6, 1970 and April 7, 1970; that such contempt is continuing; and that Claude R. Kirk, Jr. shall pay a fine to the United States of $10,000 per day beginning April 11, 1970 unless on or before Monday, April 13, 1970, at 12:00 Noon he shows to this Court by certificate filed with the Court that he is and has been fully complying with the terms of the orders of this Court since on or before 12:01 a. m. on April 13, 1970, and that he has notified all law enforcement officers and all other officers, assistants, servants, employees, agents, and attorneys under his jurisdiction or command:
(a) To cease forthwith all resistance to and interference with the orders of this Court dated April 6, 1970, and April 7, 1970;
(b) To refrain from taking any action which will impede, hinder, intimidate or frustrate the operation of the Manatee County school system and the implementation of the Order of this Court entered January 29, 1970.
IT IS FURTHER ORDERED:
That Claude R. Kirk, Jr., his officers, agents, employees and all persons acting in concert or participation with him and all other persons under the jurisdiction *279 of this Court be, and they are, hereby directed to take forthwith all necessary steps to insure full implementation of the plan of school desegregation ordered by this Court on January 29, 1970, and that to insure such compliance, the United States of America, amicus curiae herein shall file with this Court by not later than April 27, 1970, a preliminary report setting forth in detail all actions taken in furtherance of and in compliance with the Orders of this Court. Accordingly, all persons exercising authority and control over the Manatee County Board of Public Instruction shall, upon request of agents of the United States, provide and afford any and all information relative to the implementation of this Court's Orders and the operation of the public schools of Manatee County, Florida. Provided, however, that if at any time agents of the United States are persuaded that the Orders of this Court are not being fully complied with, or if it should otherwise so appear to the Court, appropriate proceedings and sanctions shall be implemented forthwith.
Jurisdiction is hereby retained for such other and further orders as may be appropriate.
IT IS FURTHER ORDERED that the United States Marshal shall serve a copy of this Order on Claude R. Kirk, Jr. forthwith.

ON MOTION TO TRANSFER TO SUPREME COURT OF UNITED STATES
On April 10, 1970, Claude R. Kirk, Jr., Governor of the State of Florida, filed a Motion to Transfer, a Motion to Quash, and a Response to Order to Show Cause.
The Motion to Transfer seeks to transfer this cause to the Supreme Court of the United States. On April 6, 1970, this Court designated the United States of America as amicus curiae that it might assist the Court in enforcing its orders. By orders dated April 6, 1970, and April 7, 1970, this Court restrained Claude R. Kirk, Jr. from interfering with this Court's lawful orders and ordered him to show cause why he should not be held in contempt. It is the position of respondent Kirk that these actions make this cause one between the United States and a State and that therefore the proper forum for this cause is the Supreme Court of the United States. U.S.Const. Art. 3, Sec. 2, cl. 2.
The court rejects this contention of respondent Kirk. There is a long line of cases squarely holding that where state officials use state power to frustrate federal court orders, those officials are subject to restraint by federal court injunctions. In such cases it is the state official and not the state itself which is the party.
"The District Court had jurisdiction. The suit is not against the state. The applicable principle is that, where state officials, purporting to act under state authority, invade rights secured by the Federal Constitution, they are subject to the process of the federal courts in order that the persons injured may have appropriate relief * * * The Governor of the state, in this respect, is in no different position from that of other state officials." Sterling v. Constantin, 287 U. S. 378, 393, 53 S.Ct. 190, 193, 77 L.Ed. 375 (1932) (Governor Sterling of Texas enjoined by federal court).
"This action is not a suit against the State of Arkansas. It does not seek to invalidate any provision of Arkansas statute or of the Arkansas Constitution. It merely seeks to enjoin the Governor and other officials of the state from committing acts beyond their lawful authority and contrary to the Federal Constitution." Aaron v. Cooper, 156 F.Supp. 220, 226 (E.D. Ark.1957) (Governor Faubus of Arkansas enjoined from using National Guard to block integration at Little Rock.)
See also, Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958); Faubus v. United States, 254 F.2d 797 (8 Cir.1958); Holmes v. Danner, 191 F.Supp. 394 (M.D.Ga.1961) (Governor *280 Vandiver of Georgia enjoined by federal court from cutting off funds to University of Georgia.); Annotation, 12 L.Ed.2d 256.
There are numerous earlier school desegregation cases in which the federal government, intervening as amicus curiae, requested and obtained injunctions against interfering state governors. In none of these cases was it held that there was a controversy between the United States and a State. See Aaron v. Cooper, 156 F.Supp. 220 (E.D.Ark. 1957), aff. sub nom. Faubus v. United States, 254 F.2d 797 (8 Cir.1958), cert. den. 358 U.S. 829, 79 S.Ct. 49; 3 L.Ed. 2d 68 (Federal Court enjoined Governor Faubus); Meredith v. Fair, 328 F.2d 586 (5 Cir.1962), 313 F.2d 532 (5 Cir. 1962) (Governor Barnett of Mississippi enjoined by Federal Court and held in contempt.); United States v. Wallace, 222 F.Supp. 485 (M.D.Ala.1963) (Governor Wallace of Alabama enjoined from obstructing school integration.) Even if the court should disregard this formidable case authority and assume that this was a suit by the United States against a State, which the court does not do, the Supreme Court would not necessarily be the proper forum since 28 U.S.C. § 1251(b) (2) provides that the Supreme Court shall have original but not exclusive jurisdiction of such cases.
The Motion to Quash seeks to quash this Court's orders of April 6, and April 7, 1970, restraining respondent Kirk from obstructing justice and ordering him to show cause why he should not be held in contempt. The basis of the motion is that these orders interfere with the executive discretion of the Governor of Florida as vested in him by state law and the state constitution. It is also alleged that the orders violate the separation of powers.
The argument that a federal court may not interfere with the discretionary acts of state officials has been rejected on innumerable occasions.
"We think there is no merit in the appellants' argument that the discretion of the Governor in using the National Guard in derogation of the judgment and orders of the federal District Court and in violation of the constitutional rights of the eligible Negro students could not be questioned. In Sterling v. Constantin, 287 U.S. 378, at 397, 53 S.Ct. 190, at page 195, 77 L.Ed. 375, the Supreme Court said of an analogous contention:
`If this extreme position could be deemed to be well taken, it is manifest that the fiat of a state Governor, and not the Constitution of the United States, would be the supreme law of the land; that the restrictions of the Federal Constitution upon the exercise of state power would be but impotent phrases, the futility of which the state may at any time disclose by the simple process of transferring powers of legislation to the Governor to be exercised by him, beyond control, upon his assertion of necessity. Under our system of government, such a conclusion is obviously untenable. There is no such avenue of escape from the paramount authority of the Federal Constitution. When there is a substantial showing that the exertion of state power has overridden private rights secured by that Constitution, the subject is necessarily one for judicial inquiry in an appropriate proceeding directed against the individuals charged with the transgression.'" Faubus v. United States, 254 F.2d 797, 806 (8 Cir.1958).
There can be no doubt, therefore, that "this Court has ample power to proceed against any party * * * which is shown to be engaged in a wilful, intentional effort to frustrate this Court's injunction." Meredith v. Fair, 328 F.2d 586, 588 (5 Cir.1962); see also Holmes v. Danner, supra; Bush v. Orleans Parish School Board, supra; United States v. Wallace, supra; Wilson & Co. v. Freeman, 179 F.Supp. 520 (D.Minn.1959).
The Court also rejects the contention that there has been a violation of the separation of powers principle. If there is a conflict here, it is between the judicial *281 arm of the federal government and the executive arm of a state government. Under our Constitution and laws it is clear that in cases of such conflict the state government must yield. Martin v. Hunter's Lessee, 1 Wheat. 304, 4 L.Ed. 97 (1816); U.S.Const. Art. 6, Cl. 2; see United States v. Peters, 5 Cranch 115, 3 L.Ed. 53 (1809).
In his Response, Claude R. Kirk, Jr. admits to certain facts, denies he is in contempt, injects certain irrelevancies, and makes four prayers for relief, to wit: that the motions to quash and to transfer be granted, that this Court's orders be stayed, and that this Court grant such other and additional relief as may be deemed proper.
In view of the foregoing, it is
ORDERED, ADJUDGED, AND DECREED:
1. The Motion to Transfer, filed by Claude R. Kirk, Jr. is denied.
2. The Motion to Quash, filed by Claude R. Kirk, Jr., is denied.
3. The four prayers for relief contained in the Response to Show Cause, filed by Claude R. Kirk, Jr., are denied, with the proviso that this Court will grant the relief it deems proper to the parties in dealing with the motion of the United States of America for adjudication that Claude R. Kirk, Jr. is in contempt of the Court.
4. Jurisdiction is retained for such further orders and proceedings as may be necessary in this cause.

ADDITIONAL JUDGMENT OF CIVIL CONTEMPT

Findings of Fact
1. On April 7, 1970, this Court entered an Order directing the Board of Public Instruction of Manatee County, if they have not already done so, to immediately resume control and supervision of the public school system of Manatee County, Florida, and in accordance with their respective obligations under the Constitution and the Laws of the United States of America to operate said system in compliance with the order of this Court dated January 29, 1970, as soon as possible and no later than Thursday, April 9, 1970, and to disregard any directions or instructions to the contrary from respondent Claude R. Kirk, Jr., his officers or agents.
2. The Order of April 7, 1970, further enjoined and restrained Claude R. Kirk, Jr., his officers, servants, employees, agents and attorneys from taking and continuing any conduct or action which would serve to impede, hinder, intimidate or frustrate the said defendants, the Manatee Board of Public Instruction and said Superintendent of Schools, their employees and agents, in the performance of their duties as aforesaid.
3. On April 9, 1970, Lloyd Hagaman, Robert Dooley Hoffman, and the Sheriff of Manatee County, Florida, Richard W. Weitzenfeld, were personally served with copies of said Order and had knowledge of the said Order at the Office of the Superintendent of Schools of Manatee County, Florida, by a Deputy United States Marshal.
4. On April 9, 1970, Lloyd Hagaman and Robert Dooley Hoffman did refuse to vacate the premises of the Administrative Offices of the Manatee County Board of Public Instruction pursuant to the request of a Deputy United States Marshal with deliberate and announced purpose of preventing compliance with the orders of this and other Federal Courts.
5. This Court having entered on April 10, 1970, an Order requiring Lloyd Hagaman, Robert Dooley Hoffman, and Richard W. Weitzenfeld to appear before this Court at 3:30 p.m. to show cause, if any, why they should not be held in civil contempt of the temporary restraining order of April 7, 1970, a hearing was called, and Lloyd Hagaman and Robert Dooley Hoffman appeared and testified in person before this Court that they intended to continue acting as agents for Claude R. Kirk, Jr. in violation of the Order of this Court dated April 7, 1970.
*282 6. The Court further finds that the Sheriff of Manatee County, Florida, Richard W. Weitzenfeld, is the chief law enforcement officer of Manatee County. Sheriff Weitzenfeld appeared in person and stated to the Court that pursuant to special instruction of the Governor of the State of Florida all State law enforcement officers acting in their respective official capacities are subject to his supervision and direction during the week of April 5, 1970. His authority includes supervision not only of all Deputy Sheriffs, but also Beverage Department agents, Highway Patrolmen, Mansion Security agents and all other duly authorized State agents while they are working in Manatee County in furtherance of their operations.
The Court finds that Sheriff Weitzenfeld is an agent of the Governor of the State of Florida. Sheriff Weitzenfeld personally falls within the purview of those to whom the Court's Order of April 7, 1970, is addressed. This Court finds that upon the direct instructions of the Governor of the State of Florida, the Sheriff disobeyed the Order of April 7, 1970.

CONCLUSIONS OF LAW
1. This Court has jurisdiction over the persons of Lloyd Hagaman, Robert Dooley Hoffman and Sheriff Richard W. Weitzenfeld.
2. Lloyd Hagaman, Robert Dooley Hoffman and Sheriff Richard W. Weitzenfeld are in civil contempt of the temporary restraining order of April 7, 1970.

JUDGMENT OF CIVIL CONTEMPT
It is therefore CONSIDERED, ORDERED, ADJUDGED and DECREED that:
1. Lloyd Hagaman and Robert Dooley Hoffman are in civil contempt of the temporary restraining order of this Court entered on April 7, 1970; that such contempt is continuing, and that Lloyd Hagaman and Robert Dooley Hoffman shall pay a fine to the United States of $1,000 per day beginning April 11, 1970, unless on or before Monday, April 13, 1970, at 12:00 noon, they show this Court by certificate filed with the Court that they are taking no action to impede or frustrate the implementation of the order of this Court entered January 29, 1970, that they intend to take no such action in the future and that they will, during any periods of time that they are acting for or on behalf of, as agents of, or in the name, place or stead of, or with the authority or power of Claude R. Kirk, Jr.:
Cease and desist from taking and continuing any conduct or action which serves or will serve to impede, hinder, intimidate or frustrate the implementation of the order of this Court dated January 29, 1970.
2. Sheriff Richard W. Weitzenfeld is in civil contempt of the temporary restraining order of this Court entered on April 7, 1970; but on April 10, 1970, Sheriff Weitzenfeld stated to the Court under oath that he would obey the April 7, 1970, Order, and that he would do nothing to interfere with or obstruct its execution.
The Court is of the opinion, based upon Sheriff Weitzenfeld's statements to the Court, that he will instruct his agents, employees and supporting personnel to obey the Court's Order of April 7, 1970. The Court therefore, will defer consideration of sanction against Sheriff Weitzenfeld until such time, if any, that his actions indicate any degree of insincerity with the Court. The Court earnestly hopes that no future action by it will become necessary.
The United States Marshal is directed to serve copies of this Order on Lloyd Hagaman, Robert Dooley Hoffman and Sheriff Richard W. Weitzenfeld.
The Court retains jurisdiction of this matter for such further orders as may be appropriate.